**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LOUNETTA PYKE,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:25-CV-01162-O** |
| | § | |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **DEFENDANT.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.  STATEMENT OF THE CASE**

Plaintiff Lounetta Pyke ("Pyke") filed this action pursuant to Section 405(g) of Title 42 of

the United States Code for judicial review of a final decision of the Commissioner of Social

Security denying her claims for a period of disability and disability insurance benefits ("DIB")

under Title II of the Social Security Act ("SSA") and for supplemental security income ("SSI")

under Title XVI of the SSA.  On April 14, 2022, Pyke protectively filed her applications, alleging

that her disability began on February 8, 2022.  (Transcript ("Tr.") 33; *see* Tr. 222-23; 246-70.)

After her applications were denied initially and on reconsideration, Pyke requested a hearing

before an administrative law judge ("ALJ").  (Tr. 33.)  On October 24, 2024, the ALJ held a

telephone hearing.  (Tr. 56-79.)  At the hearing, Pyke's representative requested a "closed period disability from between the dates of February 8, 2022, to August 20, 2024."  (Tr. 60); *see* also Tr. 33 ("At hearing a closed period of disability was requested from February 8, 2022, to August 20, 2024.").)  On November 20, 2024, found that Pyke was not disabled within the meaning of the SSA.  (Tr. 30-50.)  Pyke then filed a request for review of the ALJ's decision with the Appeals Council.  (Tr. 26-27.)  On June 26, 2024, the Appeals Council denied Pyke's request, leaving the ALJ's decision as the final decision of the Commissioner.  (Tr. 20-25.)  Pyke subsequently filed this civil action seeking review of the ALJ's decision.

## I.  STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. §§ 401-434, and SSI benefits are governed by Title XVI, 42 U.S.C. §§ 1381-1385, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both [DIB] and SSI."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity ("SGA").  42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the claimant must not be presently working at any SGA.  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1572, 416.972.  Second, the claimant must have an impairment or combination of

impairments that is severe.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  Third, disability will be found if the impairment, or combination of impairments, meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404 Subpt. P, App. 1.  *See* 20 C.F.R. §§ 404.1520(a)(iii), (d), 416.920(a)(iii), (d).[1]  Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.   20 C.F.R. §§ 404.l520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f).   And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experience.  *Id.* §§ 404.l520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197- 98 (5th Cir. 1999).  At steps one through four, the burden of proof rests upon the claimant to show she is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  *Id.*  If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work.  *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam).  Substantial evidence is such relevant evidence

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations.  20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e).  The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis.  *Id.* §§ 404.1520(a)(4), 416.920(a)(4).  At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work.  *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II.   ISSUE

In her brief, Pyke presents the following issue: whether the ALJ committed reversible error by not discussing Pyke's work attempt in his physical RFC determination that found Pyke could walk and/or stand for six hours on a regular and continuing basis. (Plaintiff's Brief ("Pl.'s Br.") at 1; 7-13; *see* Plaintiff's Reply ("Pl.'s Reply") at 5-10.)

## III.   ALJ DECISION

In his November 20, 2024, decision, the ALJ found that Pyke had not engaged in any SGA since February 8, 2022, her alleged onset date of disability, and that she met the disability insured status requirements of the SSA through December 31, 2027. (Tr. 35.) As to her SGA, the ALJ stated, "Income noted in earning records from 2023 appears to be income that was not derived from work, and although the claimant testifies at hearing to performing work in 2024, including currently, no evidence was presented at hearing that this work has been performed at SGA levels." (Tr. 36) (internal citation omitted). At Step Two, the ALJ found that Pyke suffered from the

following "severe" impairments: "Osteoarthritis of the Bilateral Knees, Asthma, Hypertension, and Obesity." (Tr. 36 (emphasis omitted).)

At Step Three, the ALJ concluded that Pyke did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 39-40.) As to Pyke's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently in light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can sit for 6 hours out of an 8-hour day. The claimant can walk and/or stand for 6 hours of an 8-hour day. The claimant can frequently balance. The claimant can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. There would be no climbing of ladders, ropes, and scaffolds. The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.

(Tr. 40 (emphasis omitted).) At Step Four, the ALJ found that Pyke had no past relevant work. (Tr. 48.) Subsequently, the ALJ categorized Pyke, who was born on August 3, 1970, as an individual closely approaching advanced age on the alleged disability onset date of February 8, 2022, as she was 51 years old.[2] (*Id.*) In addition, the ALJ noted that Pyke had "at least a high school education." (*Id.*) That said, the ALJ described Pyke's transferable job skills as "not an issue because the claimant does not have past relevant work." (*Id.*) Finally, at Step Five, the ALJ concluded that, based on Pyke's age, education, work experience, RFC, and vocational expert testimony, "there are jobs that exist in significant numbers in the national economy" that Pyke could perform. (Tr. at 48; *see* Tr. at 48-49.) Accordingly, the ALJ found that Pyke was not disabled as defined in the SSA from February 8, 2022, through the date of the decision. (Tr. 49.)

---

[2] A person closely approaching advanced age is 50 to 54 years old. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).

## IV.    DISCUSSION

As set forth above, Pyke argues that there is no substantial evidence to support the ALJ's physical RFC determination because the ALJ did not discuss Pyke's work activity in his analysis. (Pl.'s Br. at 7-13.)  In support of her claim, Pyke asserts:

> The ALJ did not discuss probative evidence of Pyke's work activity before her alleged onset date in formulating the RFC determination. The ALJ did not acknowledge or mention that Pyke continued to work as a case manager because she could accommodate her difficulties with walking and standing when working from home. Still, she could not accommodate these difficulties when she was required to return to the office. . . . These difficulties with walking and standing are inconsistent with the ability to walk and/or stand for 6 hours in an 8-hour workday.

(Pl.'s Br. at 8 (internal citations omitted)).  Plaintiff, citing to Social Security Ruling 96-8p, argues that, "[b]y failing to acknowledge or discuss the probative evidence regarding Pyke's work activity, the ALJ did not build an accurate and logical bridge to determine that Pyke could walk and/or stand for 6 hours on a regular and continuing basis."  (Pl.'s Br. at 9.)

RFC is what an individual can still do despite his limitations.[3]  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling."  SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

6

considered, and it is based upon all of the relevant evidence in the case record. *Id.* at *3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In addition, the ALJ is not required to discuss each aspect of the evidence that is present in the record. *See Bordelon v. Shalala*, 41 F.3d 661 (5th Cir. 1994); *see also Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994.) The ALJ is required to explain the reasons for his decision, but the ALJ's RFC determination can still be supported by substantial

evidence even if some evidence that supports or contradicts his determination is not specifically discussed. *See Harrison v. Colvin*, No. 13–CV–2851, 2014 WL 982843, at \*4 (N.D. Tex. Mar. 12, 2014.) In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

In this case, Pyke argues that, as required by SSR 96-8p, the ALJ erred in not addressing Pyke's prior work attempt when formulating Pyke's RFC. (Pl.'s Br. at 7-13.) Although Pyke cites to two out-of-circuit cases in support of this argument, the courts in this circuit do not require the ALJ to expressly discuss a claimant's work attempts in formulating an RFC determination. While the issue generally comes up in terms of whether the ALJ is required to consider a claimant's work history in assessing a claimant's credibility, courts in this circuit regularly reject the argument that an ALJ erred in failing to consider a claimant's long work history (or attempts to work) when assessing credibility because this is but one factor to be considered. *See*, *e.g.*, *Gonzalez v. Colvin*, No. SA-16-CA-00659-ESC, 2017 WL 2538595, at \*7-8 (W.D. Tex. June 12, 2017); *see also McGee v. Astrue*, No. 2:10-cv-1826, 20212 WL 7456174, at \*8 (W.D. La. Nov. 26, 2012), *rep. and rec. adopted*, 2013 WL 704624 (W.D. La. Feb. 26, 2013) ("According to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), a claimant's work history is but one factor to consider when evaluating plaintiff's symptoms."); *Young v. Kijakazi*, No. 3:21-cv-139, 2022 WL 1627183, a \*4 (S.D. Miss. Sept. 7, 2022) ("While there is jurisprudence from other circuits holding that a claimant with a good work record is entitled to substantial credibility when claiming that she can no longer work due to a disability, the Fifth Circuit has not adopted this rule."). In the cases regarding credibility, the courts routinely, *inter alia*, review the language in SSR 96-7p and/or SSR 96-8p[5]

---

[5] *"SSR 96-7p requires credibility assessments to be made on all the evidence in the record, including 'prior work record and efforts to work.'"* *Klaus v. Colvin*, No. 4:15-CV-0593-Y-BL, 2016 WL 4573878, at \*15 (N.D. Tex.

before finding, in essence, that, while the ALJ must consider all evidence, there is no requirement that work history or work attempts be discussed in the ALJ decision. *See, e.g., Crawford v. Comm'r, Soc. Sec. Admin*., No. 5:24-CV-112-RWS, 2025 WL 2784869, at *5 (E.D. Tex. Sept. 30, 2025) (quoting SSR 96-8P); *Bradshaw v. Saul*, No. 4:18-cv-00947-P-BP, 2019 WL 7461703, at *4 (N.D. Tex. Dec. 12, 2019), *rep. and rec. adopted*, 2020 WL 42283 (N.D. Tex. Jan. 2, 2020) ("But in the Fifth Circuit, courts do not require an ALJ to consider a claimant's lengthy work history as evidence of her credibility."); *see also Roberson v. Colvin*, No. 13-CV-197, 2015 WL 1408925, at *8 (N.D. Tex. Mar. 27, 2015);

Moreover, contrary to Pyke's arguments, the ALJ was clearly aware of Plaintiff's attempt to work as, during the hearing before the ALJ, Pyke's attorney stated:

> Ms. Pyke attempted to work for Sonia Golden as an activities assistant in May of this year, but she couldn't perform the physical requirements for the job, so she ended up quitting. She later was lucky enough to find another job where her limitations have been accommodated at West Care Texas Incorporated, where she's working as an overnight monitor, and she's been there since August of this year.

(Tr. 60.) In addition, the ALJ specifically questioned Pyke about her current job as well as her attempt to go back to work in May 2024. (Tr. 62-63.) During this questioning, Pyke explained that, during her work attempt in May 2024, the job required too much movement, which resulted in swelling in her legs. (*Id*.) Pyke also told the ALJ that her current job "is conditioned to [her] capabilities" and she does not have to do a lot of walking or driving. (Tr. 63.)

Furthermore, the ALJ, in his decision, stated that, "although the claimant testified at [the] hearing to performing work in 2024, including currently, no evidence was presented at [the]

---

Aug. 4, 2016) (quoting SSR 96-7p[5], 1996 WL 374186, at *5 (S.S.A. July 2, 1996)). SSR 96-7p was superseded by SSR 16-3p in 2016. SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017 (republishing SSR 16-3p "with a revision detailing how [the social security administration will apply] the SSR as it related to the applicable date). "SSR 96-8p also identifies '[e]vidence from attempts to work' as a factor to consider when assessing a claimant's RFC." *Klaus*, 2016 WL 4573878, at *15 (quoting SSR 96-8p, 1996 WL 374184, at *5) (alterations in original).

hearing that this work has been performed at SGA levels." (Tr. 36.) While the ALJ may not have specifically discussed Plaintiff's prior work attempt during his discussion on Pyke's RFC determination, the ALJ was clearly aware of such information in making the RFC determination.[6] The fact that the ALJ "did not follow formalistic rules" in articulating his RFC determination, "compromises no aspect or accuracy that this process is designed to ensure." *Falco* 27 F.3d at 164; *see Grennan v. Comm'r of Soc. Sec.*, No. 4:21-cv-00645-O-BP, 2022 WL 2056277, at 4 (N.D. Tex. May 23, 2022) ("[T]he Fifth Circuit has repeatedly rejected arguments seeking to impose formulaic requirements on ALJs explaining their RFC findings.").

Moreover, even if the ALJ erred by failing to discuss Pyke's prior work attempts, any error is harmless because substantial evidence supports the ALJ's physical RFC determination. *See, e.g.*, *Dodson*, 2018 WL 1157781, at *13 ("Even if the ALJ erred by failing to consider [the claimant's] strong work history, any error is harmless because substantial evidence supports the ALJ's credibility determination."); *Bradshaw*, 2019 WL 7461703, at *4 ("Moreover, it is not reversible error when the ALJ fails to consider the claimant's work history to determine credibility as the Fifth Circuit has held that any such error would be harmless.") (citing *Falco*, 27 F.3d at 164 and *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003)). In this case, as required by case precedent,

---

[6] *See, e.g.*, *Thomas v. Comm'r of Soc. Sec.*, No. 2:20-cv-123-TBM-MTP, 2022 WL 590023, at *7-8 (S.D. Miss. Jan. 11, 2022), *rep. and rec. adopted*, 2022 WL 586768 (S.D. Miss. Feb. 25, 2022) (As the ALJ "asked Plaintiff about her work history during the hearing," the ALJ . . . was aware of Plaintiff's work history at the time of her decision."); *Dodson v. Berryhill*, No. 5:16-CV-269-C, 2018 WL 1157781, at *12 (N.D. Tex. Feb. 12, 2018), *rep. and rec. adopted*, 2018 WL 1157959 (N.D. Tex. Mar. 2, 2018) (stating that, since the ALJ considered the claimant's testimony in her credibility analysis as the hearing transcript revealed that the claimant made the ALJ aware of the claimant's twenty-year history twice, "the ALJ did not fail to consider [the claimant's] work history"); *Gonzalez*, No. SA-16-CA-00659-ESC, 2017 WL 2538595, at *8 (noting that, "[w]hile the Fifth Circuit has not expressly addressed whether an ALJ is required to consider a plaintiff's lengthy work history as bolstering evidence of a plaintiff's credibility[,]" the ALJ in this case was aware of the evidence of Plaintiff's work history and "was not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility"); *Roberson*, 2015 WL 1408925, at *8 (finding no reversible error when the ALJ did not expressly consider claimant's 30-year work history in his credibility determination as "the failure to reference such in his findings does not mean he was not aware of the history").

the ALJ created a logical bridge using the evidence in the record to explain how he reached his physical RFC determination.[7] (*See* Tr. 40-48.)  The ALJ began his physical RFC analysis by, *inter alia*, addressing Pyke's knee injuries and surgeries.  (Tr. 41.)  The ALJ discussed Pyke's physical therapy reports throughout 2022, including where Pyke reported little to no pain on multiple occasions, had a five-out-of-five knee strength, met 80% of her physical therapy goals, and had full range of motion in her knees.  (Tr. 42; *see* Tr. 524, 550, 593.)  The ALJ also discussed the relief and improvement Pyke reported from her knee injections, at home exercises, and physical therapy.  (Tr. 42; *see* Tr. 548.)  The ALJ further addressed Pyke's use of assistive devices for ambulation in the months following her surgeries, recognizing that Pyke used a wheelchair and walker shortly after her surgery.  (Tr. 43-44; *see* Tr. 412, 414, 420, 548, 552.)  However, the ALJ noted that, as Pyke continued to heal following her operations and received knee injections, she no longer needed, for the most part, an assistive device for ambulation.  (Tr. 44; *see* Tr. 522, 720-21.)  The ALJ also discussed Pyke's obesity, evidence noting a trace of edema bilaterally in Pyke's lower legs and knees, and Pyke's testimony at the hearing as compared to the evidence in the medical records.  (Tr. 45-46.)  The ALJ then discussed the medical opinion evidence in the record, setting forth what opinions he found persuasive or unpersuasive.  (Tr. 46-48.)

In other words, the ALJ used his discretion to address the information he found persuasive, particularly the statements of the state agency consultant, and information that he found unpersuasive, such as Pyke's contradictory statements regarding her pain and medical opinion evidence that was not supported by the evidence in the record.  As set forth above, the record shows that the ALJ clearly considered and analyzed the evidence in the record relating to Pyke's physical impairments and other evidence, including Pyke's prior work attempts and work history.

---

[7] "The law only requires an 'accurate and logical bridge' within the ALJ's RFC explanation." *Grennan*, 2022 WL 2056277, at *4 (quoting *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)).

The ALJ exercised his responsibility as factfinder in weighing the evidence and choosing to incorporate limitations into the physical RFC.  *See Jacobs v. Berryhill*, No. 5-17-CV-429-XR-RBF, 2018 WL 3323764, at \*5 (W.D. Tex. July 6, 2018), *rep. and rec. adopted*, No. 5-17-CV-429, 2018 WL 4688775 (W.D. Tex. July 24, 2018.)  Accordingly, the Court finds substantial evidence supports the ALJ's RFC determination and remand is not required.

**RECOMMENDATION**

It is recommended that the Commissioner's decision be **AFFIRMED**.

**NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS, AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

12

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 2, 2026**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED June 18, 2026.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE